Christian, J.,
delivered the opinion of the court.
James Pryor was convicted of arson in the county C0Ur^ Nelson, upon an indictment charging him with burning a barn, the property of Thomas H. Parrar. A motion for a new trial was made, and refused by the county court; and upon application to the judge of the circuit court of hTelson a writ of error to the judgment of the county court was refused. To this refusal by the judge of the circuit court a writ of error was awarded by one of the judges of this court.
This court has always acted with great caution in granting new trials in cases where the new trial is asked solely upon the ground that the verdict is contrary to the evidence; and great weight is always given, and justly so, to the verdict of the jury and judgment of the court in which the case is tried. The cases are very rare where this court interferes; and it is only in a case where the evidence is plainly insufficient to warrant the finding of the jury.
This court has laid down certain rules, affirmed in several cases, from which it has never departed, and which prove a safe guide in determining such questions.
In Blosser v. Harshbarger, 21 Gratt. 214, the rules established by the general court in Grayson’s case, 6 Gratt. 712, are adopted and reaffirmed by this court. They are as follows:
A new trial will be granted:
1. Where the verdict is against law. This occurs where the issue involves both law and fact, and the verdict is against the law of the case upon the facts proved.
2. Where the verdict is contrary to the evidence. This occurs where the issue involves matter of fact *1011 only, and the fact proved required a different verdict from that found by the jury.
3. Where the verdict is without evidence to support it. This occurs where there- has been no proof whatever of a material fact, or not sufficient evidence of the-fact or facts in issue. Where some evidence has been given which tends to prove the fact iff issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court if upon the jury would have given a different verdict.
' To warrant a new trial in such cases the evidence should he plainly insufficient to warrant the finding of the jury.
The case before us must be determined by these rules.
The certificate of facts certified by the county court is in these words:
“ The following are the facts proven upon the trial of the prisoner upon the indictment aforesaid: That on the night of the 12th of December, 1874,' being Saturday night, the barn of Mr. Thos. H. Farrar, in this county, was consumed by fire, together with one hundred and twenty-five barrels of corn, all his'shucks and some fodder then therein, several stacks of wheat •straw, and a threshing machine estimated in value at from $700 to $750 (seven hundred and fifty dollars)— that the fire was discovered by Mr. Farrar between ten and eleven o’clock; that the barn was of very light and dry material, and was very speedily consumed, •at least by eleven o’clock, that being the time when Mr. Farrar returned to his house, by his clock. The •next morning Mr. Farrar, in looking about the premises, discovered tracks leading to and from the barn, through a small piece of ground around the barn, *1012 which had been cultivated in tobacco; that the land was light, and the footprints very plainly and perfectly made; as soon as he saw these, and there were no others either near the barn or going to or from it, to the public road, he recognized them as the tracks of Jas. Pryor, the prisoner at the bar.
That the prisoner v?as living with him on his farm up to the last of September or first of October theretofore; had a difficulty with his wife about that time, and had attempted to whip her, which was prevented by Mr. Farrar; he was told by Mr. Farrar that no such conduct would be permitted upon his farm, and that he must leave, which was done by the prisoner moving to a neighbor’s, Mr. Wm, Currier’s; that Mr. Currier’s team removed his plunder from Farrar’s farm; that while the wagon was being loaded the prisoner said to Mr. Farrar that he would have his revenge in spite of “Lize,” meaning his wife, and all her protectors; that a few days thereafter he besought a justice and requested of him such process as would compel Mr. Farrar to deliver his wife—the justice took no steps in the premises, having no jurisdiction; that the shoes were quite noted on account of their peculiar shape, wrought in their wearing by the prisoner; that they were gaiters, Ho. 8 or 9’s, and the heels had turned back, making them unusually long between the heel and ball of the foot, so that the instep had given away and the hollow of the foot or shoe coming down upon the ground like any other portion of the foot; that these shoes had been worn by the prisoner while on his, Farrar’s farm.
That he had the same shoes on the Friday evening before the barn was burnt; that on said Friday evening he asked Geo. Brown, a negro who had worked with him on Mr. Farrar’s farm, to give him a pair of *1013 shoes, described by witness as worn to a hull, “they looked like Sunday shoes—he thought they were the same shoes.” The tracks were traced in the direction of prisoner’s house for more than half a mile, going and coming through the farm to the public road and across the road up a bank into the woods, going in the direction of the prisoner’s house, a mile or mile and a half from the road. ■ The distance from prisoner’s house to the barn being from two to two and a half miles; that it was nearer to the barn from where these tracks came into the public ( ) by Mr. Earrar’s house by about one hundred and fifty or two hundred yards, but he had a very bad dog which the prisoner knew, hence the digression around his house—his house being between the house of the prisoner and the barn. The barn did not belong to Mr. Earrar,” but to one-, from whom Earrar had rented the premises.
The court then inserts into the bill of exceptions certain facts tending to prove an alibi, which were proved by witnesses introduced by the accused. But in considering the question of a new trial we can only look to the evidence offered by the commonwealth, and must reject that offered by the accused. The question we have to determine is, whether the facts certified as facts proved by the commonwealth are sufficient to warrant the finding of the jury.'’ If they are plainly insufficient to warrant the verdict, then under the rules above cited the prisoner was entitled to a new trial. The bill of exceptions signed by the judge of the county court, shows that the evidence was wholly circumstantial, and that there are but two circumstances which can in any way connect the accused with the offence charged in the indictment, as to produce more than a strong suspicion of guilt. One is, that months before the burning, the accused while in the employ (with his *1014 wife) of Farrar, had a difficulty with his wife and attempted to whip her; which was prevented by Mr. Farrar, who told him that no such conduct would be permitted on his farm, and that he must leave. He did leave, but his wife refused to go with him. 'Upon leaving he said he would have his revenge in spite of Lize (meaning his wife) and all her protectors; and that a few days afterwards he applied to a justice of the peace, and requested of him such process as would compel Mr. Farrar to deliver his wife—which the justice refused, because he was of opinion that he had no jurisdiction in the case. Six months afterwards, (this declaration having been made in September, and the burning of, the barn having been done in March,) this statement of the accused is regarded as a threat of revenge against Mr. Farrar, and as the motive which influenced the accused in burning the barn of Farrar. This must be all mere presumption, and is not even a reasonable presumption.
In this declaration of the accused (which is construed to be a threat against Mr. Farrar) he might have referred to his purpose to get possession of his wife. His declaration was, “he would have his revenge in spite of Lize and all her protectors.” In furtherance of this purpose, he did apply to a justice of the peace to compel his wife to go with him. This conduct following immediately after the refusal of his wife to go with him, tends to show that he was, or might have been, excited and exasperated because of his wife’s refusal to accompany him, and the threat he made might have been directed against his wife’s refusal ,to go with him, and not of any purpose of revenge against Mr. Farrar. This hypothesis is certainly not inconsistent with his conduct. His declaration “that he would have his revenge in spite of Lize and her *1015 protectors,” does not necessarily, mean a threat of'vengenee against Mr. Farrar; but may have meant that he would regain the possession of his wife; and that the threat was against her, and not against Mr. Farrar. At least it cannot be said upon the facts certified, that this threat was directed against Farrar, and that this constituted the motive of the accused to burn the barn of Farrar, with which he is charged.
The only other circumstance in the case which tends to raise a suspicion against the accused, is that a track was found on the morning after the barn was burned, which Farrar says he recognized as the tracks of the prisoner. This was only the opinion of the witness, that the tracks he saw were the tracks of the prisoner. I say it was only the opinion of the witness, and is not proof that the tracks seen by him were the tracks of the accused, because the witness goes on to give his reasons for that opinion; and they are, that when the accused left his farm in September he wore gaiter shoes, Ho. 8 or 9, and the heels had turned back, making them unusually long between the heel and ball of the foot; so that the instep had given way, and the hollow of the foot or shoe coming down upon the ground like any other portion of the foot. How this is the description of the shoes worn by the prisoner three months before the track was made.
George Brown, another, and only other, witness for the commonwealth, says he saw the accused on Friday evening, the day before the barn was burnt, and the shoes he had on were worn to a hull, and he thought they were the same shoes described by Farrar as worn by the prisoner in September. All this evidence is mere matter of opinion. Ho witness proved that the track discovered was the track of the prisoner. There is this noteworthy fact, that the track discovered near *1016 the barn was not traced to the house of the prisoner, but to a point which was only within at least a mile and a half of the prisoner’s house. For was, as is usual in such case, the track measured and compared with the prisoner’s track; but the track seen in the tobacco lot of Farrar is declared by him as the track of the prisoner simply because the prisoner in September before had a pair of gaiter shoes, the heels of which projected behind. All this is a mere matter of opinion, and in that respect is not sustained by the commonwealth’s evidence; for it is certainly very doubtful, if not impossible, that the gaiter shoes worn by the prisoner in September would have made the same track in December when the shoes were worn to a hull. The shoes spoken of by Brown are not identified as the same shoes of which Farrar speaks as worn by the prisoner in September. The shoes are not produced, the foot of the prisoner is not measured, and there is no proof that the prisoner had in March, when' he was indicted, or in December, when the barn was burnt, a pair of shoes corresponding with those described by Farrar as being worn by him in September. Such evidence as this is too conjectural and too uncertain upon which to convict a man of felony.
It is a fact too, worthy of note, that the prisoner was not arrested for several months after the burning, though he was in the immediate neighborhood. As was well said by the counsel for the accused: “ If the liberty of the citizen, however humble, is to be taken away upon such evidence as this, and an infamous offence fastened upon him, the tenure by which the citizen holds his liberty and good name is slender indeed.”
The court is of opinion that the facts proved by the commonwealth are plainly insufficient to warrant the *1017 verdict of the jury, and that the judgment of the county court refusing to grant a new trial must be reversed.
The judgment was as follows:
This day came again as well the plaintiff in error by counsel, as the attorney general on behalf of the commonwealth, and the court having maturely considered the transcript of the record of the judgment aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the judgment of the county court of Nelson county, u that the said James Pryor be imprisoned in the public jail and penitentiary house of this commonwealth for the term of nine years, the period by the jurors in their verdict ascertained to hard labor” is erroneous, •and that the same be reversed and annulled; this court being of opinion that the facts proved by the commonwealth, as certified by the said county court, are plainly insufficient to warrant the finding of the jury, and that the said county court ought to have set aside the verdict of the jury, and awarded to the prisoner a new trial. And this court now proceeding to enter such judgment as the said county court ought to have rendered, it is therefore adjudged and ordered that the said verdict of the jury be set aside, and a new trial be awarded to the plaintiff in error.
Which is ordered to be certified to the said county court of Nelson county.
Judgment reversed.